IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
|---|---|---|
| Plaintiff, | ) ) ) | CIVIL ACTION NO. 3:10-CV-00142 |
| v. | ) ) | COMPLAINT |
| MCGEE BROTHERS CO., INC., | ) ) | JURY TRIAL DEMAND |
| Defendant. | ) ) ) | |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of national origin (Hispanic), and to provide appropriate relief to Jose Avelar and other similarly situated Hispanic employees who were adversely affected by such practices. Specifically, Plaintiff the United States Equal Employment Opportunity Commission (the "EEOC" or the "Commission"), alleges that Defendant, McGee Brothers Co., Inc. ("Defendant"), subjected Avelar and other similarly situated Hispanic employees to a hostile work environment because of their national origin, Hispanic.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3) ("Title VII") and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Western District of North Carolina.

## PARTIES

3. The Commission is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII, and is expressly authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. Defendant is a North Carolina corporation with its principal place of business in Monroe, North Carolina.

5. At all relevant times, Defendant has continuously been doing business in the State of North Carolina and the City of Monroe, and has continuously had at least 15 employees.

6. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## STATEMENT OF CLAIMS

7. More than thirty days prior to the institution of this lawsuit, Avelar filed a charge with the Commission alleging violations of Title VII by Defendant. All conditions precedent to the institution of this lawsuit have been fulfilled.

8. From at least January 2006 through at least October 2007, Defendant engaged in unlawful employment practices at its office in Monroe, N.C., and work-sites in the Charlotte, N.C., area, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1) as set forth below:

>   a. Defendant subjected Avelar to harassment that created a hostile work environment based on his national origin, Hispanic. The harassment was perpetrated by one of Defendant's foremen (non-Hispanic), who was in Avelar's direct line of supervision and was the leader of Avelar's crew. The harassment included unwelcome comments, such as calling Avelar a

"fucking Mexican" on a daily basis. Although Avelar is from El Salvador, the foreman referred to all of the Hispanic employees on the crew as "fucking Mexicans" regardless of what country they were from. Non-Hispanic workers were not referred to by this derogatory term based on national origin. In addition, the foreman would tell Avelar and the other Hispanic workers to work faster and would make comments to Avelar such as "dickhead hurry up" or "mother fucker hurry up" on a daily basis. If Avelar asked the foreman a question regarding the location of certain material, the foreman would answer "it's up my ass." The foreman did not use this type of derogatory language to non-Hispanics, and did not on a regular basis as he did with the Hispanic workers, tell non-Hispanic workers to hurry up while they were working. When Avelar told the foreman that he was going to request a transfer to a different work crew due to the foreman's treatment, the foreman replied that he would fire Avelar if Avelar requested a transfer.

On one occasion during the relevant period, the foreman became angry and threw bricks at the scaffold where Avelar was working and yelled "dickhead, hurry up." Around October 4, 2007, the foreman threw a hammer at Avelar. The crew on which Avelar worked was working on scaffolds at a worksite and another Hispanic employee was driving a forklift. The foreman was telling the employees to work faster and was making derogatory remarks to the Hispanic employee driving the forklift. That employee parked the forklift near the scaffold that the foreman was working on and went to his car, stating he was not going to work anymore.

3

At this point, the foreman directed Avelar to drive the forklift. Avelar put the forklift in reverse and backed the forklift out of a hole. The forklift hit the scaffolding on which the foreman was working. The foreman called Avelar a "mother fucking wetback" and threw a hammer at him. The hammer hit the top of the forklift. The foreman came down from the scaffold, and angrily looked at Avelar. Avelar gathered his tools, left the worksite and called one of Defendant's supervisors who is believed to be the foreman's direct supervisor. Avelar complained to the supervisor about the foreman throwing a hammer at him and about the foreman's verbal derogatory comments based on national origin. On information and belief, no action was taken by the supervisor regarding Avelar's complaint.

The next day, on or about October 5, 2007, Avelar planned to go to Defendant's office to complain about both the foreman's harassment and the supervisor's failure to take action. Prior to going to the office, Avelar spoke with the supervisor by phone who asked Avelar to meet him rather than going to the office to complain. Upon meeting with the supervisor, Avelar again told the supervisor about the derogatory comments made by the foreman to Avelar and other Hispanic workers, as set forth herein. The supervisor told Avelar that he would take care of it and asked Avelar not to complain to the office. The next day that Avelar was scheduled to work, the supervisor transferred Avelar to a different work group. The supervisor told Avelar that if Avelar asked to be transferred again, he would be fired.

Avelar was offended and humiliated by the comments made to him

and to other Hispanic employees that were based on their national origin, Hispanic. Avelar asked the foreman to stop making the comments but the foreman continued doing so. Avelar did not welcome or invite the comments in any way and complained about them to one of Defendant's supervisors. Sometimes Avelar was afraid to go to work because of the foreman's harassment.

b. Defendant subjected other similarly situated Hispanic employees to the hostile work environment that it knew existed as a result of the foreman's derogatory language toward Hispanic employees. Said foreman was likewise a supervisor in the direct line of supervision of the similarly situated Hispanic employees. The harassment was severe or pervasive and included but was not limited to, comments like "fucking Mexicans" and saying "dickhead hurry up" on a daily basis to the Hispanic employees. The foreman did not use derogatory language toward non-Hispanic workers. The harassment also included the foreman throwing buckets and/or shovels at least one of the similarly situated Hispanic employees. The Hispanic employees were offended by, and did not welcome or invite, these comments and/or conduct. At least one of the Hispanic employees indicates that he resigned his employment due to the harassment.

c. Defendant is liable for the harassment perpetrated against Avelar and similarly situated Hispanic employees and the resulting hostile work environment because the foreman who created the hostile work environment is a supervisor in the direct line of authority over Avelar and the other affected Hispanic workers.

9. The effect of the practices complained of in paragraph 8 above has been to deprive Jose Avelar and other similarly situated employees of equal employment opportunities and otherwise adversely affect their status as employees, because of their national origin, Hispanic.

10. The unlawful employment practices complained of in paragraph 8 above were intentional.

11. The unlawful employment practices complained of in paragraph 8 above were done with malice or with reckless indifference to the federally protected rights of Avelar and other similarly situated Hispanic employees.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from creating, maintaining or engaging in a hostile work environment or any other employment practice which discriminates on the basis of national origin, and from retaliating against employees who oppose practices made unlawful by Title VII.

B. Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for Hispanics, and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant to make whole Jose Avelar and other similarly situated Hispanic employees by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraph 8 above, including but not limited to medical expenses, in amounts to be determined at trial.

D. Order Defendant to make Jose Avelar and other similarly situated Hispanic employees whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of in paragraph 8 above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, loss of self-esteem, and loss of civil rights, in amounts to be determined at trial.

E. Order Defendant to pay Avelar and other similarly situated Hispanic employees punitive damages for its malicious and/or reckless conduct described in paragraph 8 above, in amounts to be determined at trial.

F. Grant such further relief as the Court deems necessary and proper in the public interest.

G. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint. This the 25th day of March, 2010.

> Respectfully submitted,
>
> JAMES L. LEE
> Deputy General Counsel
>
> GWENDOLYN YOUNG REAMS
> Associate General Counsel
> EQUAL EMPLOYMENT OPPORTUNITY
> COMMISSION
> 1801 L Street, N.W.
> Washington, D.C. 20507
>
> s/ Lynette A. Barnes
> LYNETTE A. BARNES (NC Bar # 19732)
> Regional Attorney
>
> TINA BURNSIDE (WI Bar# 1026965)

7

Supervisory Trial Attorney

s/ Nicole A. Epstein
NICOLE EPSTEIN (NC Bar# 26689)
Trial Attorney

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Charlotte District Office
129 West Trade Street, Suite 400
Charlotte, North Carolina 28202
(704) 954-6468 (Direct Dial)
(704) 954-6412 (Facsimile)
Nicole.Epstein@eeoc.gov

**ATTORNEYS FOR PLAINTIFF**

8