# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# DOCKET NO. 3:10-cv-142-FDW-DSC

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) ) **ORDER** |
| MCGEE BROTHERS CO., INC., | ) ) |
| Defendant. | ) ) |

THIS MATTER is before the Court on Plaintiff Equal Employment Opportunity Commission's ("EEOC" or "Commission") Motion for New Trial, or in the alternative, Renewed Motion for Mistrial (Doc. No. 64) and Defendant's Motion for Costs and Fees (Doc. No. 65). Having reviewed the Commission's Motion for New Trial, as well as the briefs in support and opposition, the record, and the relevant law, the Commission's Motion is DENIED. Likewise, Defendant's Motion for Attorney's Fees is also DENIED, but Defendant may seek taxation of costs from the Clerk in the ordinary course.

## I. BACKGROUND

**A.     Motion for New Trial**

On March 25, 2010, the Commission filed a complaint alleging Defendant subjected Jose Avelar and other similarly-situated Hispanics, through Defendant's foreman Neil Stallings, to a hostile work environment in violation of Title VII of the Civil Rights Act of 1964. Shortly before discovery closed on December 2, 2010, the Commission informed Defendant via letter dated November 30, 2010, that it would not be seeking relief or damages on behalf of any potential class members, but it would continue to pursue relief on behalf of the charging party, Jose Avelar. (Doc.

No. 36-1).

Prior to trial, which was originally scheduled to commence on March 21, 2011, the Court heard argument on a number of motions *in limine*, including motions filed by the Commission to exclude evidence and testimony relating to class allegations (Doc. No. 38) and to exclude the testimony of Commission investigators Melinda Caraballo and Melvin Hardy (Doc. No. 37), as well as a motion by Defendant to, *inter alia*, exclude testimony and evidence of disparate treatment of Hispanic employees by Defendant (Doc. No. 33). The Court excluded testimony of class allegations and allowed testimony and evidence of Defendant's treatment of Hispanics compared to non-Hispanics as being relevant to the Commission's *prima facie* case,[1] but noted that there was no distinct claim for a disparate treatment cause of action contained in the Complaint. (Text Order denying Motion for Reconsideration (Doc. No. 53) dated April 21, 2011). Furthermore, the Court permitted the investigators' testimony but limited it to explicitly preclude "testimony regarding the Commission's investigative procedure or deliberative process." (Doc. No. 48).

After the Court temporarily stayed the case for the purpose of allowing the parties additional time to conciliate at the March 21 pre-trial motions hearing, trial in this matter was re-calendered for April 26, 2011. Prior to the new trial date, both parties filed motions for reconsideration of the Court's pre-trial evidentiary rulings, including Defendant's Motion for Reconsideration of the Court's order excluding testimony of class allegations but allowing testimony of "comparative treatment" (Doc. No. 53), and the Commission's Motion for Reconsideration of the Court's order

---

[1] See, e.g., Hoyle v. Freightliner, LLC, No. 09-2024, 2011 WL 1206658 at *6 (4th Cir. April 1, 2011) (slip copy) (describing the elements necessary for a hostile work environment claim, including that the unwelcome conduct must be "because of" the protected class); Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80-81 (1998) (recognizing that the "because of" element of a hostile work environment claim may be shown by "direct comparative evidence about how the alleged harasser treated members of both" the protected group and the non-protected group in the work place).

permitting testimony by the Commission investigators (Doc. No. 51). The Court denied each of these motions. (Text Oder denying Motion for Reconsideration (Doc. No. 51) dated April 21, 2011; Text Order denying Motion for Reconsideration (Doc. No. 53) dated April 21, 2011).

In advance of trial, the parties agreed on a number of exhibits to be introduced at trial as "joint exhibits." Among these was Joint Ex. 1, Avelar's initial Charge of Discrimination, filed on October 18, 2007, with the Commission, which included allegations that Stallings made Hispanics lay brick at a faster rate than non-Hispanics and treated Hispanics that arrived late to the job-site differently than late-arriving non-Hispanics. The parties stipulated to the authenticity and admissibility of Joint Ex. 1. Over the course of the trial itself, there were a number of arguments made outside the presence of the jury to determine the contours of the Court's evidentiary rulings regarding testimony relating to allegations made by Avelar that were not pursued by the Commission. Repeatedly, the Court ruled that the question before the jury was whether Defendant had subjected Avelar to a hostile work environment and allowed evidence that was relevant to that question, including that pertaining to Avelar's credibility, and excluded evidence that only related to the Commission's pre-Complaint investigation or determination as to the disparate treatment allegation made by Avelar. Specifically, the Court heard argument as to the extent, if any, Joint Ex. 1 should be redacted to exclude the allegations of disparate treatment among Hispanics. Consistent with the Court's earlier rulings, the Court ordered that Joint Ex. 1 should not be redacted as the allegations were relevant to the Commission's *prima facie* case and could be referenced by Defendant for impeachment purposes. Joint Ex. 1 was admitted at trial and referenced by both parties throughout the course of trial.

During closing argument, Defendant's counsel made two statements that the Commission argued at sidebar constituted prejudice and/or bias to the Commission necessitating an order of

3

mistrial. Specifically, the Commission argued that counsel for Defendant prejudiced the Commission when it referred to allegations made by Avelar that the Commission "discarded," in contravention of the Court's evidentiary rulings. (Tr. 23:12-16). The Commission argued that Defendant's counsel also misstated the law with regard to what the jury needed to find in order for there to be a hostile work environment. (Tr. 20:23-25, 21:3-5). The Court denied the Commission's motion for mistrial, but gave the jury a curative instruction. When the jury returned a verdict in favor of Defendant after deliberating for approximately thirty-five (35) minutes, the Commission renewed its motion for mistrial. The Court permitted the Commission additional opportunity for briefing. The Commission's Motion for New Trial has now been fully briefed and is ripe for disposition.

**B.     Motion for Costs and Fees**

In Defendant's Trial Brief (Doc. No. 32), Defendant signaled its intention to move for attorney's fees at the conclusion of the trial, arguing: (1) the Commission failed to conciliate in good faith[2]; (2) the Commission took legally unfounded positions in asserting privileges against Defendant's discovery attempts; (3) the Commission failed to properly investigate the class action allegations to give proper notice to Defendant and to render a Determination not to pursue class allegations prior to filing suit; and (4) the Commission continued to prosecute the case against Defendant "after it became apparent there was little or no basis for doing so." (Id.)

At the March 21, 2011 pre-trial motions hearing, the Court *sua sponte* addressed the issue of attorney's fees and concluded that, because the Commission's hostile work environment claim had survived summary judgment, attorney's fees would not be rewarded should Defendant prevail.

---

[2] The Court has concluded as a matter of fact that the Commission satisfied the statutory prerequisites to suit and has conciliated in good faith. (Doc No. 61).

Defendant filed a Motion for Reconsideration (Doc. No. 52) and orally moved for an assessment of costs and fees after the jury returned its verdict. The Court heard argument on Defendant's Motion after the jury returned its verdict, but ordered additional briefing by the parties and took Defendant's Motion under advisement until resolution of the Commission's Motion for New Trial. Defendant's brief has now been fully briefed and is also ripe for disposition.

## II. DISCUSSION

**A.  Motion for New Trial**

1.  Standard

Pursuant to Fed. R. Civ. P. 59, the Court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law." Rule 59(a)(1)(A). The decision to grant or deny a motion for new trial ultimately "rests with the sound discretion of the district court" and is reviewed for a "clear abuse of discretion." Bristol Steel & Iron Works v. Bethlehem Steel Corp., 41 F.3d 182, 186 (4th Cir. 1994) (citations omitted).

In considering a motion for a new trial, the Court "may weigh the evidence and should grant a new trial only if '1) the verdict is against the clear weight of the evidence, 2) is based on evidence which is false, or 3) will result in a miscarriage of justice.'" Bryant v. Aiken Regional Med. Ctrs. Inc., 333 F.3d 536, 543 (4th Cir. 2003) (quoting Dennis v. Columbia Colleton Med. Ctr., 290 F.3d 639, 644-45 (4th Cir. 2002)). A new trial is warranted "when a jury has reached a seriously erroneous result as evidenced by . . . the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias." Mike's Train House, Inc. v. Lionel, LLC, 472 F.3d 398, 405 (6th Cir. 2006) (quotation omitted).

Courts have ordered new trials "when opposing counsel's conduct causes prejudice to [the moving] party . . . thereby unfairly influencing [the] verdict." Greenway v. Buffalo Hilton Hotel,

143 F.3d 47, 51 (2d Cir. 1998) (citing <u>Minneapolis, St. Paul & Sault Ste. Marie Ry. Co. v. Moquin</u>, 283 U.S. 520, 521 (1931)). However, where "such prejudice is cured by instructions of the court, the motion for a new trial should be denied." <u>Clarksville-Montgomery Cnty. School Sys. v. United States Gypsum Co.</u>, 925 F.2d 993, 1002 (6th Cir. 1991) (citing <u>Smith v. Lightning Bolt Prods., Inc.</u>, 861 F.2d 363, 370 (2d Cir. 1988)).

2.    Analysis

The Commission argues that counsel for Defendant committed prejudicial error in two ways during his closing argument. The Court will address each in turn.

First, the Commission argues that "Defendant violated the Court's rulings excluding the admissibility of the underlying Commission investigation and evidence there were other claims alleged by Mr. Avelar that were not pursued by the EEOC." (Doc. No. 64 at 2). During closing argument, Defendant's counsel made the following comment to the jury:

> In the interest of time, I won't talk about all the other allegations that Mr. Avelar has made along the way that have been debunked, shown to have no basis or even discarded by the EEOC as not having sufficient basis or that have changed over time like a moving target.
> Just a couple examples, though. You saw on the charge where Mr. Avelar made this claim that Hispanics were being required to lay bricks at this incredibly faster rate than whites. Well, the EEOC looked at that and they didn't find sufficient evidence of it.

(Tr. 10:15-24). The Commission argues that this comment, which touched on issues that the Court had explicitly excluded from trial, was inflammatory and prejudicial to the point of requiring a new trial. The Court disagrees. After the Court denied the Commission's motion for mistrial at sidebar, it issued the following instruction to the jury:

> [T]here was a reference to claims in which the Commission chose not to go forward on because of insufficiency of the evidence.
> I told you before and I'll tell you again, you are only to concern yourself in this case about an alleged hostile workplace based on national origin, hostile

> environment in the workplace at McGee Brothers. And you're not to consider anything outside of what follows from that allegation. Those are–everything else is a legal matter for the Court, and that's not a factual dispute. You should just disregard that.

(Tr. 27:19-28:3).

The Court believes this curative instruction, given immediately following the sidebar in which the Commission voiced its objection and moved for mistrial, was sufficient to overcome any potential prejudice created by counsel's comment. "'[W]hile it may not always be simple for a jury to obey' a curative instruction, there is an 'almost invariable assumption of the law that jurors follow their instructions.'" Nichols v. Ashland Hosp. Corp., 251 F.3d 496 (4th Cir. 2001) (quoting Richardson v. Marsh, 481 U.S. 200, 206-207 (1987)). Indeed, the proximity in time to counsel's comment in which the instruction was given leaves little reason to doubt the effectiveness of the Court's instruction. Cf. United States v. Hakim, 344 F.3d 324, 330 (3d Cir. 2003).

More troubling to the Court than the likelihood of prejudice to the Commission, in light of the Court's instruction, is counsel for Defendant's apparently cavalier attitude toward the Court's evidentiary rulings. Given the long history of disputes between the parties regarding the sufficiency of the Commission's investigation and pre-Complaint procedures (see Docs. Nos. 31, 32, 33, 35, 36, 37, 38, 40, 51, 53, 55, 61) and the number of orders issued by this Court reiterating its ruling that neither the pre-Complaint investigation nor the dismissed class allegations and disparate treatment claims were issues to be considered by the jury, there can be little doubt that counsel should have taken a wider berth around the issue of "discarded" claims to comply with the spirit of the Court's rulings, if for no other reason than to avoid this issue and delay entry of final judgment. However, giving counsel the benefit of the doubt that he was simply referring to Joint Ex. 1, which was already admitted in evidence, as he argued during sidebar (Tr. 24:2-26:4), and noting that the parties and the

7

Court are familiar with the history of this case whereas the jury was not, the Court concludes counsel for Defendant did not violate this Court's orders. Furthermore, no prejudice existed as a result of counsel's reference to "discarded" claims that was not corrected by the Court's curative instruction.

Second, the Commission argues counsel for Defendant erred when he "misstated the *prima facie* elements of a hostile work environment claim." (Doc. No. 64 at 4). The Commission points to counsel's statement to the jury that:

> The question is that you have to find that he threw the hammer with the intent to hit Mr. Avelar, and not just hit Mr. Avelar, hit Mr. Avelar because he's Hispanic. . . . So if you don't find that Mr. Stallings intended to hit Mr. Avelar because he's Hispanic, there's no issue with discrimination here. Maybe bad judgment on the part of Mr. Stallings. Somebody could have gotten hit with that hammer, but that's not a Title VII discrimination matter. That's another matter for another day.

(Tr. 5:10-12, 7:6-11). While the Court agrees that this is a misstatement of the law and that Title VII does not require assault for a hostile work environment to be actionable, the Court believes its curative instruction was sufficient to cure any prejudice this statement may have had on the Commission. Immediately following sidebar, the Court instructed the jury:

> THE COURT: [Mr. Kelly] made a statement that the throwing of the hammer had to be–had to be an intent to hit Mr. Avelar for that to be a basis for a national origin harassment and that is legally incorrect. What is legally correct is there just has to be the intimidation of the hammer tied to national origin discrimination. That's what's important. Do you understand that?
> THE JURY: (Shakes their heads up and down.)

(Tr. 27:11-18). This instruction, like the instruction given to address the Commission's first assignment of error, was close in time to the allegedly prejudicial statement. Additionally, the jurors affirmatively demonstrated their understanding of the instruction by nodding their heads.

Furthermore, the Court instructed the jury at the start of the trial it is the jury's "duty to accept my instructions of law and apply them to the facts as you determine them." Before the parties made their summations, the Court further instructed the jury that, "If any difference appears

to you between the law as stated by the attorneys in closing arguments and that stated by me in these instructions, you are to be governed by my instructions." Because the Court gave the jury three separate instructions, including a curative instruction, indicating that they were to accept the law as provided by the Court and the Court was able to anticipate a situation in which a discrepancy appeared between counsel's characterization of the law and the Court's, the Court concludes that its instructions were sufficient to cure any potential errors created by counsel's argument.

No prejudicial effect caused by counsel for Defendant's argument was unaddressed by a curative instruction by the Court. Because the Court will cleave to the long-standing presumption that juries follow their instructions, the Commission's Motion for New Trial or, in the alternative, Renewed Motion for Mistrial, must be DENIED.

**B.      Motion for Costs and Fees.**

Defendant, as the prevailing party, moves for an assessment of attorney's fees and costs to be taxed against the Commission. Because costs are normally taxed by the Clerk of Court pursuant to Fed. R. Civ. P. 54(d)(1), the Court will only address the issue of attorney's fees.

1.      Standard

Title VII permits the Court, in its discretion, to "allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person." 42 U.S.C. § 2000e-5(k). A prevailing Title VII defendant may be awarded attorney's fees "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." Chirstianburg Garment Co. v. E.E.O.C., 434 U.S. 412, 421 (1978). However, the Court is not to "engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation.

Id. at 421-22. Furthermore, district courts should award attorney's fees "sparingly" and an award should be issued "based upon the reasonableness of the claims as they existed at the time of trial." Glymph v. Spartanburg Gen. Hosptial, 783 F.2d 476, 479 (4th Cir. 1986).

While it is true that a denial of summary judgment or motion for directed verdict does not preclude an award of attorney's fees, it is a factor that may be taken into consideration when determining if an award of fees is appropriate. See Introcaso v. Cunningham, 857 F.2d 965, 968 (4th Cir. 1988). Thus while "it may be rare for a claim which survives a motion to dismiss at the close of plaintiff's case to be held groundless," id., it may occur, such as where "it should have been apparent to the plaintiff that a defense would make his claims groundless . . . ." E.E.O.C. v. Jordan Graphics, Inc., 769 F. Supp. 1357, 1385 (W.D.N.C. 1991) (citing Introcaso, 857 F.2d at 968; Blue v. United States Dep't of Army, 914 F.2d 525, 536-37 (4th Cir. 1991)).

2.     Analysis

Here, the Commission's action was not so "frivolous, unreasonable, or without foundation," Chirstianburg Garment Co., 434 U.S. at 421, as to warrant an award of attorney's fees. Avelar's version of events, while perhaps not precise on details or dates, remained consistent from the initial Charge of Discrimination filed in October 2007 through his deposition and testimony at trial. As the Commission notes, Avelar's Charge of Discrimination, which was signed by Avelar under penalty of perjury, included the allegations that Stallings threw a hammer at Avelar and called him "motherfucking wetback." These allegations, as well as Avelar's allegation that Stallings referred to him as a "fucking Mexican" on a daily basis was made to the Commission before the Commission filed its Complaint and were testified to by Avelar under oath both at his deposition and at trial. The Charge of Discrimination also included allegations that Stallings treated Hispanics differently from non-Hispanics, and from these allegations, the Commission was able to identify two putative class

10

members, Paulino Ocampo and Rogelio Daniel Guevara-Mora, who ultimately could not be located during discovery. Presented with Avelar's allegations, the Commission had reasonable grounds for filing and maintaining its hostile work environment claim against Defendant.

That Defendant found Avelar's allegations to be frivolous does not make them so for the purposes of awarding attorney's fees. Additionally, the fact that some allegations–such as the allegation that Stallings referred to Avelar as "fucking Mexican" daily–first arose after the initial Charge of Discrimination and other allegations–such as the allegation of disparate treatment–were dismissed before the Commission filed its Complaint are of no concern to the Court. "[T]hose discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those *developed by reasonable investigation of the original complaint* may be maintained in a subsequent Title VII lawsuit." Jones v. Calvert Group, Ltd., 551 F.3d 297, 300 (4th Cir. 2009) (citation omitted) (emphasis added). Thus, the Court is unconcerned with what occurred prior to the filing of the Complaint. E.E.O.C. v. Gen. Elec. Co., 532 F.2d 359, 370 (4th Cir. 1976); see also E.E.O.C. v. KECO Indus., Inc., 748 F.2d 1097, 1100 (6th Cir. 1984). Nor is the Court persuaded by Defendant's argument that because Avelar was "completely descredited" at trial, an award of attorney's fees is appropriate. (Doc. No. 65 at 5). Not only does Defendant invite the Court to engage in exactly the sort of *post hoc* analysis that is prohibited, but it also invites the Court to speculate as to what credibility conclusions the jury made in reaching its verdict.

Finally, the Court disagrees that an award is justified against the Commission because Defendant's Faragher/Ellerth defense was available. As the Commission notes, whether Defendant could satisfy its defense remained a disputed issue throughout trial and the existence of an anti-harassment policy alone that had been signed by Avelar is not dispositive of the defense. (Doc. No. 66 at 9).

The Court cannot conclude that the Commission acted frivolously or unreasonably in filing and maintaining its suit. Although the jury only took thirty-five (35) minutes to reach a verdict, the allegations and evidence presented to the Commission by Avelar, made under oath or penalty of perjury, made it reasonable to bring a Title VII action on Avelar's behalf. Accordingly, Defendant's Motion for Attorney's Fees is DENIED.[3]

Nothing in this Order shall be construed to preclude Defendant from seeking costs pursuant to Rule 54 and 28 U.S.C. § 1920 in the ordinary course from the Clerk of Court.

### III. CONCLUSION

IT IS THEREFORE ORDERED that the Commission's Motion for New Trial or Renewed Motion for Mistrial (Doc. No. 64) is DENIED. Additionally, Defendant's Motion for Attorney's Fees (Doc. No. 65) is DENIED. Defendant may seek an assessment of costs in the ordinary course.

Defendant's Motion for Reconsideration (Doc. No. 52) is DENIED as moot.

The Clerk is directed to enter judgment in this matter consistent with the verdict of the jury.

IT IS SO ORDERED.

Signed: May 26, 2011

Frank D. Whitney
United States District Judge

---

[3] The Court also notes that Defendant has not provided "the amount sought or provide[d] a fair estimate of it" as required by Rule 54(d)(2)(B) in a motion for attorney's fees.